UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.T., through her duly appointed guardian, DENISE TRAVIS, and DENISE TRAVIS, <br><br> Plaintiffs, <br><br> v. <br><br> CRAIG EDWARD HAHN, and GOOD WILL INSTRUMENT CO., LTD, <br><br> Defendants. | Case No. 4:18-cv-01139-SNLJ |

## MEMORANDUM AND ORDER

Pending before the Court is a motion to dismiss for lack of personal jurisdiction filed by defendant Good Will Instrument Co., Ltd. (#7) under Federal Rule of Civil Procedure 12(b)(2). Upon consideration of the pleadings, motions, relevant exhibits, and applicable law, the motion is **GRANTED**. Plaintiffs' Complaint (#1-2) is **DISMISSED** against Good Will Instrument Co., Ltd., without prejudice. Furthermore, defendant Craig Edward Hahn is also **DISMISSED** for the reasons already set forth in *A.T. v. Newark Corp.,* 2017 WL 57251 (E.D. Mo. Jan. 5, 2017) (Limbaugh, J.).

### I. FACTUAL BACKGROUND

**A. The Parties and Their Prior Litigation History**

On November 11, 2014, Marreo Travis was electrocuted and died while using a Tenma AC Power Source 72-7675 at his place of employment. Decedent, a Missouri resident, worked at Ferro Magnetics Corporation. His mother, Denise Travis, and

1

daughter, A.T., bring this wrongful death case. Defendant Good Will Instrument Co., Ltd, a Taiwanese company, has been named in this case as the manufacturer of the product. Also named in this case is Craig Edward Hahn, decedent's direct supervisor at Ferro.

This case was originally filed in the Circuit Court of St. Louis County, but Good Will removed it to this Court on the basis of diversity jurisdiction. This case runs parallel to *A.T. v. Newark Corp.,* Case No. 4:16-cv-00448-SNLJ, 2017 WL 57251 (E.D. Mo. Jan. 5, 2017) (Limbaugh, J.), which was also removed from state court to this Court. In that parallel case, this Court dismissed Good Will and Hahn as defendants; yet, both show up here, once again, as an apparent result of this Court's prior rulings in the parallel case.

Hahn—like plaintiffs—is a Missouri resident, and upon finding plaintiffs could not establish a negligence claim against him, this Court dismissed him as a defendant in the parallel case under the fraudulent joinder doctrine. *Id*. Specifically, this Court found that under Missouri law Ferro had a "non-delegable duty to provide a safe workplace," and the allegations raised against Hahn—that he did not correct specific dangers in the workplace through his supervisory authority—did not sufficiently invoke a separate, independent duty on which to base a negligence claim. *Id.* at *4. Absent a meritorious claim against Hahn, this Court found that adding him as a defendant in an effort to defeat diversity jurisdiction constituted fraudulent joinder. It is not altogether clear why Hahn was added to this case in light of the Court's prior ruling. However, what is clear is that the allegations against Hahn in this case are facially identical to those alleged in the parallel case, which may explain why plaintiffs have not filed a motion for remand to state court.

Good Will was dismissed in the parallel case for a different reason. This Court found that plaintiffs failed to serve Good Will with process. *Id.* Plaintiffs did, however, serve Instek America Corp.—Good Will's domestic subsidiary located in California— arguing Instek was Good Will's agent. *Id.* at *2. This Court determined Instek was not Good Will's agent and that Good Will would, therefore, have to be independently served under Rule 4 of the Federal Rules of Civil Procedure. *Id.* at *4. Plaintiffs state as part of their briefing in this case that they were up against a deadline under the relevant statute of limitations when this Court dismissed Good Will for lack of service of process in the parallel case; so, under a time crunch, they "immediately filed a new action against Good Will in state court—rather than spending the time to seek leave to refile against Good Will in this Court." As noted, Good Will then removed that state court action on the basis of diversity jurisdiction. Thus, there are now two cases pending before this Court regarding the same decedent and product making up plaintiffs' wrongful death claims. Neither party argues about service-of-process-related issues in their briefings currently before the Court—that particular issue appears to have been resolved.

**B. Good Will's Current Motion to Dismiss**

**i. The Parties' Arguments**

Good Will filed its pending motion to dismiss arguing this Court lacks personal jurisdiction over it. In Good Will's view, it has "no connection to the State of Missouri"—having merely sold products to third-parties in Asia that, by no act of its own, eventually ended up in Missouri. Good Will also argues abatement, colloquially known as the pending action doctrine, should apply here and result in the dismissal of this

action because the parallel case, still pending before this Court, involves the same subject-matter, the same parties, and was first to be filed.

Plaintiffs vigorously disagree. Invoking the "stream of commerce" theory, plaintiffs argue "Good Will targets Missouri through [a] robust distributor scheme." In plaintiffs' view, "it is only reasonable for Good Will, who sent defective products into Missouri through regional distributors, to anticipate being haled into court by [p]laintiffs in Missouri." As for the abatement issue, plaintiffs counter by pointing out that Good Will is not a "party" to the parallel action and, therefore, it cannot be said that it involves the same subject-matter *and the same parties*.

### ii. Specific Facts Relevant to the Parties' Jurisdictional Arguments

The following facts are undisputed. Good Will is a Taiwanese business entity registered in Taiwan with its principle place of business in Taiwan. It has no offices, property, employees, bank accounts, advertisements, agents, or licensures in Missouri. It has never directly shipped any products into Missouri, and in fact is not a retailer and does not sell directly to consumers. Goodwill designed the product—the Tenma AC Power Source 72-7675—in Taiwan as an original design manufacturing item for Newark Corporation. Good Will manufactures the product, including the particular product that was involved in Decedent's death, in Suzhou, China. In 2012, Newark, doing business as element14 Asia Pte Ltd., placed an order with Good Will for multiple Tenma AC Power Source 72-7675 in Singapore. That deal, which included the specific product-at-issue responsible for decedent's death, was finalized in China. Good Will fulfilled Newark's order by shipping the products from the Port of Shanghai, China, to the Port of Dayton,

Ohio, in the care of Gaffney RDC Warehouse located in Gaffney, South Carolina. In selling Tenma-branded products, Good Will does not affix its own names or logos to the products, but instead uses the Tenma private label as requested by Newark. Good Will has only sold Tenma-branded products to Newark, and has never sold Tenma-branded products to any other company.

It is here where the parties' view of the facts sharply diverge. Good Will alleges, by way of a declaration through Helena Wang (Manager of the Overseas Sales Department of Good Will), that Newark is not a distributor of Good Will, but is instead an independent third-party purchaser. Good Will points to the Global Supply Agreement between them where Good Will is referred to as a "seller" and Newark (and its associated companies) are referred to as "purchasers." Good Will declares there is no distribution agreement between it and Newark. Good Will declares that it does not encourage Newark to sell any of its products to a particular state or area. Good Will further declares Newark does not need to obtain approval before selling or shipping products to any particular location within the United States; moreover, Newark is not required to and does not tell Good Will what it does with any products once they are shipped from China. The relevant purchase order described above indicates only that the products are for resale in Illinois, South Carolina, and California. Good Will concludes that the products at issue, including the particular Product responsible for decedent's death, left its possession, control, and ownership when they were shipped from Good Will's manufacturing plant in China.

On the other hand, plaintiffs point to the same Global Supply Agreement between Good Will and Newark in which it is stated "*Purchaser is purchasing the Products with the intent to distribute them* under the SPC Technology, or TENMA, or Multicomp name in North America." (emphasis in original). They refer to a website operated by "GW Instek" suggesting GW Instek is the alter-ego of Good will.[1] In that regard, plaintiffs point out that the website specifically displays Newark under a "where to buy" tab with a hyperlink leading to Newark's own website; Newark's website, in turn, indicates that it is a "GW INSTEK Authorized Distributor" at the top of the webpage. Plaintiffs also direct this Court's attention to a tweet by Newark regarding a "GPT-9000 Series Electrical Safety Tester" that was re-tweeted by GW Instek.[2] As to the relevant purchase order described above, they argue that Illinois—one of the listed stated on the purchase order—is "conveniently border[ed by] six states, including Missouri" and that, in fact, Newark sold the products at issue to each bordering state except for Indiana. Plaintiffs allege that Good Will targets Missouri, specifically, because another "distributor," Valuetronics, advertises a dedicated "sales engineer" who is responsible for customers in Missouri. Finally, plaintiffs assert that Good Will has twelve distributors around the United States that are "strategically placed coast to coast" in California, New York, New Jersey, Massachusetts, Texas, Pennsylvania, and Illinois. Plaintiffs remind the Court that,

---

[1] From the exhibit, alone, it is not altogether clear that Good Will Instruments Co., Ltd, and GW Instek are the same company, or whether they might have a parent-subsidiary relationship. That said, it is noted that Good Will is mentioned several times on the website—including information related to copyright protections.
[2] The fact of re-tweeting is, apparently, a sign to plaintiffs that Good Will actively and directly promotes Newark to consumers in America.

"because all of this information can be found with a simple internet search," Good Will's "purported ignorance" about its products ending up in Missouri "defies reason."

## II. ANALYSIS

### A. Personal Jurisdiction

#### i. Legal Standard

To survive a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a *prima facie* showing of jurisdiction; that is, the "plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). "Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff's prima facie showing is "tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion[] and in opposition thereteo." *Id*.

In a diversity action such as this one, the Court "may assume jurisdiction over the nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). Recognizing a qualitative difference in inquiry between what a state *permits* under its long-arm statute and the Constitution *allows*, the Eighth Circuit has cautioned that these two questions should be evaluated separately. *Dairy Farmers of America, Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472, 475-476 (8th Cir. 2012).

The Missouri Supreme Court has held that the legislature intended the Missouri long-arm statute "to provide for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment." *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984); *see* 28 U.S.C. § 1652. Thus, Missouri's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, but only for acts within its enumerated categories, which include claims for negligence and strict liability. *See* § 506.500.1(3) RSMo (2016).

Good Will does not argue, nor can it argue, that Missouri's long-arm statute does not extend to negligence and strict liability claims. *See, e.g., State ex rel. William Ranni Assocs, Inc. v. Hartenbach*, 742 S.W.2d 134, 138-139 (Mo. 1987). Rather, Good Will asserts that "plaintiff[s] may not invoke tortious act long-arm jurisdiction consistent with due process where the non-resident defendant *has no contact[s] with Missouri*." (#10, p. 12 (emphasis added)). That argument sounds in Due Process, not Missouri's long-arm statute.

Personal jurisdiction under the Due Process Clause comes in two varieties: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017). The exercise of general jurisdiction over a corporation may take place where "the corporation is fairly regarded as at home." *Id.* (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137

(2014). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, 137 S.Ct. at 1780 (emphasis in original). There is no claim of general jurisdiction in this case because Good Will is a Taiwanese company with its principle place of business in Taiwan.

"Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id*. (quoting *Daimler*, 134 S.Ct. at 754). Said differently, there must be "an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State." *Id*. When "there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id*. at 1781. Because of this requirement, specific jurisdiction has been called "conduct-linked jurisdiction," which focuses upon the specific conduct of the defendant in the forum state. *Daimler*, 571 U.S. at 122. Ultimately, the parties focus their dispute on the proper application of specific jurisdiction.

### ii. The Current State of the "Stream of Commerce" Theory under the Framework of Specific Jurisdiction

Plaintiffs' argument lies in the "stream of commerce" theory, which maintains generally that a company subjects itself to specific personal jurisdiction by the mere fact of placing its products into the so-called stream of commerce (usually through a distributorship with third parties) with some basic level of awareness that these products

will end up in the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum"); *Asahi Metal Industry v. Superior Court of California, Solanno City*, 480 U.S. 102 (1987) (plurality opinion); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (plurality opinion); *Barone v. Rich Bros. Interstate Display Fireworks, Co.*, 25 F.3d 610, 612-613 (8th Cir. 1994); *see also Allianz Global Corporate and Specialty Marine Ins. Co. v. Watts Regulator Co.*, 92 F. Supp.3d 910, 914-917 (S.D. Iowa 2015) (explaining the historical backdrop of the stream-of-commerce theory under U.S. Supreme Court and Eighth Circuit precedent); *Swift & Co. v. U.S.*, 196 U.S. 375, 399 (1905) (discussing the "current of commerce" as one of the first metaphorical uses of the stream-of-commerce theory).

But, in 2017, the Supreme Court decided *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017), which appears to have drastically changed the specific jurisdiction landscape to the exclusion of the stream-of-commerce theory. Although *Bristol-Myers* did not expressly mention the stream-of-commerce theory, it was stated that "the bare fact that [a foreign defendant] contracts with [a forum-state] distributor is not enough to establish personal jurisdiction in the State." *Id*. at 1783. The opinion continued, "In this case, it is not alleged that [the foreign defendant] *engaged in relevant acts together* with [the forum-state distributor] in [the forum state]. Nor is it alleged that [the foreign defendant] is *derivatively liable* for

10

[the forum-state distributor]'s conduct in [the forum state]." *Id*. (emphasis added). *Bristol-Myers*, therefore, expressly linked specific jurisdiction either to a foreign defendant's particular acts within the forum or the particular acts of its agent and/or alter-ego subsidiary/distributor. *Id*. at 1781-1783. There was no suggestion that mere expectation or knowledge of the effects of a distributing relationship sufficed to establish personal jurisdiction. Instead, it was held that "a defendant's general connections with the forum are not enough … [A] corporation's continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suit unrelated to that activity … As we have explained, a defendant's relationship with a [] third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1781 (internal quotations omitted).

The Eighth Circuit has yet to weigh in on the stream-of-commerce theory since *Bristol-Myers*. It appears that the only federal appellate court to consider the stream-of-commerce theory in light of *Bristol-Myers* is the Third Circuit, which indicated an unwillingness to continue applying it moving forward. *See Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 780 (3d Cir. 2018).

Nonetheless, in urging the application of the stream-of-commerce theory, plaintiffs point to Good Will's Global Supply Agreement with Newark in which it is stated that Newark, as purchaser of Good Will's products, "inten[ds] to distribute them." Plaintiffs add that the purchase order between Good Will and Newark specifically mentioned the products were for resale in Illinois, South Carolina, and California—with Illinois being a border state to the forum state, Missouri. They note that a company

11

named "GW Instek," which plaintiffs claim is a subsidiary of Good Will, specifically mentions Newark under a "where to buy" tab on the company's website and they highlight that GW Instek re-tweeted Newark, at some point, regarding an unrelated product. Finally, plaintiffs assert Good Will has twelve distributors around the United States that are "strategically placed coast to coast" in California, New York, New Jersey, Massachusetts, Texas, Pennsylvania, and Illinois.

None of these allegations can overcome *Bristol-Myers'* admonishment not to apply specific jurisdiction solely on the basis of "a defendant's relationship with a third party." *Bristol-Myers*, 137 S.Ct. at 1781. At best, plaintiffs identify facts suggesting Good Will could have reasonably foreseen, through its relationship with Newark, that its products would end up in Missouri. But, this foreseeability—because it is divorced from the specific conduct of defendant—is insufficient to support specific jurisdiction. *Id.*; *see also J. McIntyre*, 564 U.S. at 882 ("[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state"); *Asahi*, 480 U.S. at 112 ("the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed towards the forum state … [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State [is not] an act purposefully directed towards the forum state").

In fact, not even *Barone*—a case heavily relied upon by plaintiffs—can reasonably be said to apply here. *Barone* narrowly held that jurisdiction is proper over a foreign

manufacturer that "pours its products into *a regional distributor* with the expectation that the *distributor will penetrate a discrete, multi-State trade area*." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 597 (8th Cir. 2011) (*quoting Barone*, 25 F.3d at 615) (emphasis added)). *Barone*, focusing on defendant's attempt to penetrate a discrete trade area, invokes at least some tinge of the targeting-based conduct embraced by the majority in *Bristol-Myers*, 137 S.Ct. at 1781-1783. However, unlike *Barone*, plaintiffs admit here that Good Will uses distributors "coast to coast" to sell to the whole of the United States, which is the sort of diffuse, nationwide conduct denied in *Bristol-Myers*. *Id.* at 1781.

Finally, it is significant that Good Will affirmed by way of affidavit (which plaintiffs did not challenge) that it does not tell Newark where to sell its product, does not encourage Newark to sell to a particular location or trade area, and does not require Newark to obtain approval before selling or shipping products to any particular location within the United States. Simply put, Good Will does not control Newark's actions—another jurisdictional hallmark of *Bristol-Myers* missing here. *See Bristol-Myers*, 137 S.Ct. at 1783 ("In this case, it is not alleged that [defendant] engaged in relevant acts together with [the distributor] in [the forum state]. Nor is it alleged that [defendant] is derivatively liable for [the distributor]'s conduct in [the forum state]").

Because there is no indication in the record before this Court to suggest Good Will, *itself*, took action to target Missouri, and because there is no indication that Good Will *controlled* Newark in its distribution efforts (either through the principles of agency or alter-ego), this Court finds Good Will has not subjected itself to the specific personal

13

jurisdiction of Missouri. To the extent plaintiffs' stream-of-commerce theory purports to attach specific personal jurisdiction on the basis of mere foreseeability related to a defendant's relationships with third parties, without any attention paid to a defendant's own discrete efforts to target a specific forum, the Court finds that such a theory is inapplicable in light of *Bristol-Myers*, 137 S.Ct. at 1781-1783.

### B. Fraudulent Joinder of Hahn

As noted, this Court has already dismissed defendant Hahn from the first case, being a non-diverse person without an actionable negligence claim against him. *See A.T. v. Newark Corp.,* 2017 WL 57251 (E.D. Mo. Jan. 5, 2017) (Limbaugh, J.). Plaintiffs provide this Court with no rationale as to why Hahn has been properly named a defendant here, despite this case being essentially identical to the parallel case. Hahn will be dismissed, *sua sponte*, for the reasoning previously stated in this Court's above-referenced order. *Id*.

## III. CONCLUSION

Finding plaintiffs' stream-of-commerce theory does not comport with the requirements of the Due Process Clause of the Fourteenth Amendment, and finding the record does not support a finding that defendant Good Will establish sufficient contacts in Missouri for which to support a finding of specific jurisdiction over it, this Court will dismiss Good Will for lack of personal jurisdiction. Because of this, the Court need not reach the issue of abatement.

Accordingly,

14

**IT IS HEREBY ORDERED** that defendant Good Will Instrument Co., Ltd.'s motion to dismiss (#7) is **GRANTED**. Good Will is hereby **DISMISSED** from this case without prejudice.

**IT IS FURTHER ORDERED** that defendant Craig Edward Hahn is **DISMISSED** for the reasons set forth above and it accordance with this Court's prior order.

So ordered this 24th day of October 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE